# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE MENDOZA, JR., individually and as a Member on behalf of the AMALGAMATED TRANSIT UNION LOCAL 1637,<br><br>Plaintiff(s),<br><br>v.<br><br>AMALGAMATED TRANSIT UNION INTERNATIONAL, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-2485 JCM (CWH)<br><br>ORDER |

Presently before the court is plaintiff Jose Mendoza Jr.'s motion to remand to state court. (ECF No. 4). Defendants Amalgamated Transit Union International, Antonette Bryant, Lawrence Hanley, Carolyn Higgins, Tyler Home, James Lindsay, Keira McNett, Terry Richards, and Daniel Smith filed a response (ECF No. 19), to which plaintiff replied (ECF No. 20).

Also before the court is plaintiff's motion for a preliminary injunction. (ECF No. 14). Defendants filed a response (ECF No. 22), to which plaintiff replied (ECF No. 27).

Also before the court is plaintiff's second motion for temporary restraining order. (ECF No. 16). Defendants filed a response (ECF No. 23), to which plaintiff replied (ECF No. 27).

**I.  Facts**

The factual background of this case spans seven years. The court briefly summarizes plaintiff's allegations as relevant to the instant motions.

Plaintiff Mendoza was the president of Amalgamated Transit Union Local 1637 ("Local 1637"), which is a local union that is affiliated with Amalgamated Transit Union International ("International").

**James C. Mahan**
**U.S. District Judge**

Between 2010 and 2016, plaintiff had multiple disputes with International, many of which revolved around the appropriate way to read Local 1637's bylaws. Two primary disagreements between plaintiff and International concern the appropriate rate of pay for the president of Local 1637 and whether the president could designate the secretary-treasurer position as less than full-time.

Article 4 of Local 1637's bylaws governs the president's rate of pay. (ECF No. 7-11). Plaintiff asserts that the version of the 2012 local bylaws sent to him by International president Lawrence Hanley reads "The President/Business Agent shall be paid at a daily rate of 8 hours times the highest hourly rate paid to an employee in their respective job classification for 40 hours per week to perform duties of the office." (ECF No. 7-11). Plaintiff contends that International has the wrong version of Article 4 on file. (ECF No. 7). Plaintiff believes that the correct version of Article 4 omits the term "respective." (ECF No. 7). Plaintiff thus reads the bylaw language as entitling plaintiff to the highest rate of pay of any employee in the union (which is a mechanic's rate). (ECF No. 7). Plaintiff alleges that defendant International attempted to limit plaintiff's pay to the highest hourly rate paid to an employee in plaintiff's job classification of driver. (ECF No. 7).

The dispute over whether president could designate the secretary-treasurer position as less than full time turns on whether Local 1637 ever adopted amendments to its bylaws. (ECF No. 7). Plaintiff contends that Local 1637's executive board's adopted bylaws that would allow the president to designate the secretary-treasurer as less than full time. (ECF No. 7). Plaintiff alleges that defendant International would not approve of the adopted bylaws. (ECF No. 7).

Plaintiff alleges that he took proactive measures to resolve the outstanding issues with International. On December 31, 2016, plaintiff agreed to repay Local 1637 for the alleged overpayments he received as president. (ECF No. 7). Plaintiff asserts that he continues to make these payments without delay. (ECF No. 7).

On January 14, 2017, plaintiff sent a correspondence to Hanley requesting information on the proper way to amend the bylaws to avoid future conflicts with International. (ECF No. 7). Plaintiff alleges that multiple emails were exchanged, during which plaintiff explained that quorum

- 2 -

was often not met at Local 1637's meetings and the executive board was overwhelmingly in favor of amending the bylaws and planned on doing so pursuant to Section 13.2 of the ATU Constitution.[1] (ECF No. 7). Hanley expressed concern regarding the potentially anti-democratic nature of plaintiff's proposed method of amending the bylaws and suggested that Section 13.2 did not allow for amendment in the manner that plaintiff had described. (ECF No. 7).

On January 30, 2017, Hanley notified plaintiff that International would request an audit of Local 1637 by an internal auditor (Tyler Home) with the assistance of International Vice President James Lindsay.

In February and March of 2017, plaintiff and Hanley sent multiple emails to each other related to the proposed amendments (amongst other things). (ECF No. 7). Plaintiff took the position that Local 1637's executive board had validly adopted the amendments. (ECF No. 7). Hanley took the position that the amendments were not validly adopted. (ECF No. 7).

On March 10, 2017, Home and Lindsay produced their internal audit report. (ECF No. 7). The report found that Mendoza committed financial malfeasance.[2] (ECF No. 7). On April 10, 2017, Hanley removed plaintiff from his position as president and imposed a trusteeship over Local 1637. Hanley's trusteeship order states, in part:

---

[1] Section 13.2 of the ATU Constitution reads, in relevant part,

> The bylaws and rules of LUs and amendments thereto, to be legal and effective, shall be read at two (2) regular meetings of the LU and posted at appropriate locations with notice of the meeting at which the second reading shall occur before adoption and it shall require a two-thirds vote of the membership in attendance and voting at the second union meeting to adopt. After posting the proposed bylaws, rules or amendments for adoption and failing to obtain a quorum at two (2) consecutive meetings of the LU, the local executive board shall have the power, unless otherwise restricted by law, by a two-thirds vote of the total membership of the executive board to adopt such proposals on behalf of the LU. Such a vote, if taken, shall dispose of the question and stand as the vote of the LU membership. *After adoption by the LU the bylaws, rules or amendments so adopted shall be forwarded to the IP for approval and must have the approval of the IP before going into effect.*

(ECF No. 7-28 at 58) (emphasis added).

[2] Plaintiff's motion cites an independent audit report, prepared by Miller Kaplan and Arase, which states that management corrected all non-trivial misstatements in their 2015 financial reports and that none of the misstatements were material to the 2015 financial statements when considered holistically.

> It has come to the attention of this office that there are several issues severely impacting the effective administration and functioning of Local 1637. These problems include, but are not necessarily limited to, the following: 1) overpayment to the president/business agent in the form of salary' and vacation pay; 2) multiple instances or financial malpractice and/or malfeasance including failure to complete required audits, failure to authenticate expenses for purposes or reimbursement, and an unauthorized withdrawal of cash to pay officers' salaries; 3) impediments to democratic functioning, resulting in chronic failure to achieve quorums at membership meetings; 4) failure to timely process grievances; and 5) failure to comply with the directive of the International President with respect to the role and responsibilities of the financial secretary-treasurer.

(ECF No. 7-39).

The trusteeship order appointed Lindsay as trustee over Local 1637. (ECF No. 7-39). Hanley appointed International representative Antonette Bryant as hearing officer for the trusteeship hearing. (ECF No. 7).

On April 26, 2017, Hanley sent a notice of trusteeship hearing to Local 1637 and to plaintiff. (ECF No. 7-42). On May 9th and 10th, 2017, Lindsay held the trusteeship hearing. Plaintiff alleges that two members of International's general counsel, Keira McNett and Daniel Smith, were present at the meeting. Plaintiff alleges that these attorneys,

> [A]ssist[ed] Bryant during this Trusteeship hearing in denying Plaintiff Mendoza due process in the following ways, which include but are not limited to: (1) refusing to allow Mendoza to ask relevant questions during cross-examination; (2) denying Mendoza his right to cross-examine some of ATU's witnesses; (3) presenting biased interested witnesses; (4) failing to object to Bryant's status as hearing officer despite being an employee of Hanley; (5) presenting false evidence and testimony; and (6) failing to review the evidence and identify clearly exculpatory evidence at the hearing, which was their job based on their own representations at the hearing.

(ECF No. 7). Bryant subsequently ratified the trusteeship. (ECF No. 7).

Plaintiff alleges that Lindsay has requested that criminal charges be brought against plaintiff for the alleged misappropriation of union funds. (ECF No. 7).

On September 26, 2017, plaintiff filed his first motion for temporary restraining order. (ECF No. 7). The court denied the motion on September 28, 2017. (ECF No. 13).

## II. Legal Standard

### *i. Motion to remand*

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed

by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Procedurally, a defendant has thirty (30) days upon notice of removability to remove a case to federal court. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not charged with notice of removability "until they've received a paper that gives them enough information to remove." *Id.* at 1251.

Specifically, "the 'thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Casualty Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable. *Id.* (quoting 28 U.S.C. § 1446(b)(3)).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). Remand to state court is proper if the district court lacks jurisdiction. *Id.* "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004) (citing *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988)).

On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403–04 (9th Cir. 1996); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992).

. . .

. . .

. . .

### ii. *Preliminary injunctive relief*

"Injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Shelton v. Nat'l Collegiate Athletic Assoc.*, 539 F.2d 1197, 1199 (9th Cir. 1976).

Courts must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element. However, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the [movant] can support issuance of a preliminary injunction, so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 129 S.Ct. at 392).

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order only when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65.

### III. Discussion

#### i. *Motion to remand*

Plaintiff argues that the court should remand the case to state court as plaintiff's claims arise under state law. Defendant asserts that because all of plaintiff's claims are completely pre-empted by Section 301(a) of the Labor Management Relations Act ("LMRA"), the claims present federal questions. Defendant asserts in the alternative that if the court finds that plaintiff's claims sounding in tort are not pre-empted by Section 301(a), that the court should nonetheless exercise supplemental jurisdiction over the claims as they arise out of the same transaction or occurrence as plaintiff's breach of contract claims.

Section 301(a) of the LMRA grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce" and for suits "between any such labor organizations." 29 U.S.C. § 185(a). In *United Association of Journeymen v. Local 334*, 452 U.S. 615 (1981), the Court held that union constitutions are "'contracts between labor organizations' within the meaning of § 301(a)" and that "[n]othing in the language and legislative history of § 301(a) suggests any special qualification or limitation on its reach." *Id.* at 620, 624–25. The Court has since held that suits by a union member alleging breach of the union constitution is within the scope of § 301. *Wooddell v. Int'l Bhd. Of Elec. Workers, Local 71*, 502 U.S. 93, 101–02 (1991). Further, § 301(a) completely pre-empts state law tort claims if "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

Here, plaintiff's first and second causes of action allege that defendants' conduct ("Unilaterally Amending Article 4 of the Local 1637 Constitution," "failure to follow procedure in charging Plaintiff Mendoza," and imposing a trusteeship over Local 1637) breached the union constitution. (ECF No. 1). Section 301(a) grants federal jurisdiction over such claims. *See Wooddell*, 502 U.S. at 101–02; *Journeymen*, 452 U.S. at 620. Further, defendant's state-law tort claims relate to the process by which International imposed a trusteeship over Local 1637 and removed Mendoza from his position as president of Local 1637. "Resolution of [these claims] is substantially dependent upon analysis of the terms of [the relevant] labor contract[s]." *See Lueck*, 471 U.S. at 220. Therefore, Section 301(a) grants federal jurisdiction over the claims.[3] *See id.*

---

[3] As defendants note in their response to plaintiff's motion to remand, an alternative ground for exercising jurisdiction over plaintiff's tort-based claims would be that supplemental jurisdiction exists over the claims. (ECF No. 19 at 9). Supplemental jurisdiction exists under 28 U.S.C. § 1367(a) when claims are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* "Nonfederal claims are part of the same case as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Trs. of Constr. Indus. and Laborers Health and Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (quotations omitted). Here, plaintiff's claims sounding in tort arise from the same nucleus of operative facts as plaintiff's contract-based claims. Further, the claims are such that plaintiff would be expected to try them in one proceeding. Therefore, supplemental jurisdiction would be appropriate on these facts even absent original jurisdiction. *Id.*

Defendants have demonstrated that federal question jurisdiction exists over all of plaintiff's causes of action. Further, plaintiff does not allege any procedural defects in removal procedure.[4] Therefore, defendants have carried their burden of establishing that removal was proper. *See Sanchez*, 102 F.3d at 403–04.

### ii. *Motion for preliminary injunction*

Plaintiff requests a preliminary injunction that would dissolve the current trusteeship over Local 1637 and reinstate the prior executive board. Defendants argue that plaintiff has not demonstrated a likelihood of success on the merits or shown irreparable harm. Defendants further state that injunctive relief would impose greater harm on defendants than any harm that would be imposed by maintaining the status quo, and that public policy favors denial of plaintiff's requested injunctive relief.

Plaintiff's motion does not demonstrate a likelihood of success on the merits of plaintiff's claims. As defendants note, plaintiff's motion for preliminary injunction is essentially the same as plaintiff's first motion for temporary restraining order. The court finds that the instant motion suffers from the same deficiencies the court articulated in its order denying plaintiff's first motion for a temporary restraining order. *See* (ECF No. 13).

Plaintiff's motion does not discuss any relevant cause of action or why plaintiff is likely to succeed on that particular cause of action. *See* (ECF No. 14). Plaintiff's section discussing his likelihood of success on the merits is dedicated to describing and debunking the defendants' five listed reasons for removing plaintiff from his union office and for imposing a trusteeship over Local 1637. *See* (ECF No. 14). This is not enough to demonstrate probable success on the merits of plaintiff's claims. As plaintiff's motion fails to show a likelihood of success on the merits, the court will deny plaintiff's request for injunctive relief. *See Winter*, 129 S.Ct. at 392.

Further, plaintiff has not demonstrated immediate and irreparable harm that will accrue in the absence of an injunction. Defendants accurately note that the trusteeship was imposed over Local 1637 in May and plaintiff waited until September to file a lawsuit. (ECF No. 22). Plaintiff's

---

[4] Upon independent examination, the court does not see any defects in defendant's removal procedure.

explanation for the delay is that he needed time to obtain adequate legal services to investigate his claims and initiate legal action. Assuming this is true, plaintiff's filings with the court do not demonstrate that any additional harm will accrue to plaintiff if the court declines to dissolve a trusteeship that has been in place since May.

Furthermore, plaintiff has not shown that the balance of harms favors an injunction. As defendants' response articulates, defendants imposed a trusteeship over Local 1637 due to concerns regarding plaintiff's self-dealing and the highly anti-democratic nature of Local 1637. (ECF No. 22). If the court grants plaintiff's request for injunctive relief, and defendants' assertions regarding plaintiff's illegal conduct are true, then reinstating the prior executive board and dissolving the trust could cause defendants significant harm that far outweighs any harm that denial of a preliminary injunction imposes on plaintiff.

Finally, the public interest counsels against granting injunctive relief in this case. Here, an injunction would greatly upset the status quo by re-instating a suspended executive board and president and dissolving a union trusteeship. Plaintiff has not made a strong enough showing in his motion to merit his requested relief. *See Shelton*, 539 F.2d at 1199.

### iii.   *Motion for temporary restraining order*

This is plaintiff's second motion for temporary restraining order. *See* (ECF No. 7). As defendants' response notes, plaintiff's second motion is for all intents and purposes the same as plaintiff's first motion for temporary restraining order. (ECF No. 23); *compare* (ECF No. 7), *with* (ECF No. 16). As plaintiff presents the court with no compelling reason to re-consider its prior order, plaintiff's second motion for a temporary restraining order will be denied.

**IV.   Conclusion**

Plaintiff's claims are pre-empted by Section 301(a) of the LMRA. Therefore, this court has subject matter jurisdiction over the action and defendants have carried their burden of establishing that removal was proper. Further, plaintiff has not shown this court that injunctive relief is warranted on these facts.

. . .

. . .

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' motion to remand to state court (ECF No. 4) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for a preliminary injunction (ECF No. 14) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for a temporary restraining order (ECF No. 16) be, and the same hereby is, DENIED.

DATED November 2, 2017.

_____
UNITED STATES DISTRICT JUDGE