UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE MENDOZA, JR., individually and as a Member on behalf of the AMALGAMATED TRANSIT UNION LOCAL 1637,<br><br>Plaintiff(s),<br><br>v.<br><br>AMALGAMATED TRANSIT UNION INTERNATIONAL, et al.,<br><br>Defendant(s). | Case No. 2:17-CV-2485 JCM (CWH)<br><br>ORDER |

Presently before the court is plaintiff Jose Mendoza Jr.'s second motion for a preliminary injunction. (ECF No. 57). Defendants Amalgamated Transit Union International, Antonette Bryant, Lawrence Hanley, Carolyn Higgins, Tyler Home, James Lindsay, Keira McNett, Terry Richards, and Daniel Smith filed a response (ECF No. 59), to which plaintiff replied (ECF No. 60).

Also before the court is plaintiff's motion to expedite consideration of plaintiff's motion for preliminary injunction. (ECF No. 61).

**I.      Background**

*i.      Factual history*

The factual background of this case spans seven years. The court briefly summarizes plaintiff's allegations as relevant to the instant motions.

Plaintiff was employed by Keolis Transit America ("Keolis"). Plaintiff ultimately obtained the title and responsibilities of president of Amalgamated Transit Union Local 1637 ("Local 1637"), which is a local union that is affiliated with Amalgamated Transit Union International ("International").

Between 2010 and 2016, plaintiff had multiple disputes with International, many of which revolved around the appropriate way to read Local 1637's bylaws. Two primary disagreements between plaintiff and International concern the appropriate rate of pay for the president of Local 1637 and whether the president could designate the secretary-treasurer position as less than full-time.[1]

Article 4 of Local 1637's bylaws governs the president's rate of pay. (ECF No. 7-11). Plaintiff asserts that the version of the 2012 local bylaws sent to him by International president Lawrence Hanley reads "The President/Business Agent shall be paid at a daily rate of 8 hours times the highest hourly rate paid to an employee in their respective job classification for 40 hours per week to perform duties of the office." (ECF No. 7-11). Plaintiff contends that International has the wrong version of Article 4 on file. (ECF No. 7). Plaintiff believes that the correct version of Article 4 omits the term "respective." (ECF No. 7). Plaintiff thus reads the bylaw language as entitling plaintiff to the highest rate of pay of any employee in the union (which is a mechanic's rate). (ECF No. 7). Plaintiff alleges that defendant International attempted to limit plaintiff's pay to the highest hourly rate paid to an employee in plaintiff's job classification of driver. (ECF No. 7).

The second dispute, over whether president could designate the secretary-treasurer position as less than full time, turns on whether Local 1637 ever adopted amendments to its bylaws. (ECF No. 7). Plaintiff contends that Local 1637's executive board's adopted bylaws that would allow the president to designate the secretary-treasurer as less than full time. (ECF No. 7). Plaintiff alleges that defendant International would not approve of the adopted bylaws. (ECF No. 7).

Plaintiff alleges that he took proactive measures to resolve the outstanding issues with International. On December 31, 2016, plaintiff agreed to repay Local 1637 for the alleged overpayments he received as president. (ECF No. 7). Plaintiff asserts that he continues to make these payments without delay. (ECF No. 7).

---

[1] Plaintiff's second motion for preliminary injunction raises an additional argument regarding Section 12.6 of the ATU constitution. (ECF No. 59).

On January 14, 2017, plaintiff sent a correspondence to Hanley requesting information on the proper way to amend the bylaws to avoid future conflicts with International. (ECF No. 7). Plaintiff alleges that multiple emails were exchanged, during which plaintiff explained that quorum was often not met at Local 1637's meetings and the executive board was overwhelmingly in favor of amending the bylaws and planned on doing so pursuant to Section 13.2 of the ATU Constitution.[2] (ECF No. 7). Hanley expressed concern regarding the potentially anti-democratic nature of plaintiff's proposed method of amending the bylaws and suggested that Section 13.2 did not allow for amendment in the manner that plaintiff had described. (ECF No. 7).

On January 30, 2017, Hanley notified plaintiff that International would request an audit of Local 1637 by an internal auditor (Tyler Home) with the assistance of International Vice President James Lindsay.

In February and March of 2017, plaintiff and Hanley sent multiple emails to each other related to the proposed amendments (amongst other things). (ECF No. 7). Plaintiff took the position that Local 1637's executive board had validly adopted the amendments. (ECF No. 7). Hanley took the position that the amendments were not validly adopted. (ECF No. 7).

/ / /

/ / /

---

[2] Section 13.2 of the ATU Constitution reads, in relevant part,

> The bylaws and rules of LUs and amendments thereto, to be legal and effective, shall be read at two (2) regular meetings of the LU and posted at appropriate locations with notice of the meeting at which the second reading shall occur before adoption and it shall require a two-thirds vote of the membership in attendance and voting at the second union meeting to adopt. After posting the proposed bylaws, rules or amendments for adoption and failing to obtain a quorum at two (2) consecutive meetings of the LU, the local executive board shall have the power, unless otherwise restricted by law, by a two-thirds vote of the total membership of the executive board to adopt such proposals on behalf of the LU. Such a vote, if taken, shall dispose of the question and stand as the vote of the LU membership. *After adoption by the LU the bylaws, rules or amendments so adopted shall be forwarded to the IP for approval and must have the approval of the IP before going into effect.*

(ECF No. 7-28 at 58) (emphasis added).

On March 10, 2017, Home and Lindsay produced their internal audit report. (ECF No. 7). The report found that Mendoza committed financial malfeasance.[3] (ECF No. 7). On April 10, 2017, Hanley removed plaintiff from his position as president and imposed a trusteeship over Local 1637. Hanley's trusteeship order states, in part:

> It has come to the attention of this office that there are several issues severely impacting the effective administration and functioning of Local 1637. These problems include, but are not necessarily limited to, the following: 1) overpayment to the president/business agent in the form of salary' and vacation pay; 2) multiple instances or financial malpractice and/or malfeasance including failure to complete required audits, failure to authenticate expenses for purposes or reimbursement, and an unauthorized withdrawal of cash to pay officers' salaries; 3) impediments to democratic functioning, resulting in chronic failure to achieve quorums at membership meetings; 4) failure to timely process grievances; and 5) failure to comply with the directive of the International President with respect to the role and responsibilities of the financial secretary-treasurer.

(ECF No. 7-39).

The trusteeship order appointed Lindsay as trustee over Local 1637. (ECF No. 7-39). Hanley appointed International representative Antonette Bryant as hearing officer for the trusteeship hearing. (ECF No. 7).

On April 26, 2017, Hanley sent a notice of trusteeship hearing to Local 1637 and to plaintiff. (ECF No. 7-42). On May 9th and 10th, 2017, Lindsay held the trusteeship hearing. Plaintiff alleges that two members of International's general counsel, Keira McNett and Daniel Smith, were present at the meeting. Plaintiff alleges that these attorneys,

> [A]ssist[ed] Bryant during this Trusteeship hearing in denying Plaintiff Mendoza due process in the following ways, which include but are not limited to: (1) refusing to allow Mendoza to ask relevant questions during cross-examination; (2) denying Mendoza his right to cross-examine some of ATU's witnesses; (3) presenting biased interested witnesses; (4) failing to object to Bryant's status as hearing officer despite being an employee of Hanley; (5) presenting false evidence and testimony; and (6) failing to review the evidence and identify clearly exculpatory evidence at the hearing, which was their job based on their own representations at the hearing.

(ECF No. 7). Bryant subsequently ratified the trusteeship. (ECF No. 7).

---

[3] Plaintiff's prior filings in this case cite an independent audit report, prepared by Miller Kaplan and Arase, which states that management corrected all non-trivial misstatements in their 2015 financial reports and that none of the misstatements were material to the 2015 financial statements when considered holistically.

- 4 -

Upon ratification of the trusteeship, plaintiff was automatically suspended from his position as president and could no longer be booked off on leave for union business. (ECF No. 59-2). Thereafter, plaintiff voluntarily chose to not return to work at Keolis. *Id.*; (ECF No. 59-4). Keolis terminated plaintiff's employment based on job abandonment. (ECF No. 59-4).

Defendant Lindsay "directed Local 1637 to file a grievance challenging [plaintiff's] termination pursuant to the collective bargaining agreement between Local 1637 and Keolis." (ECF No. 59-2). Keolis agreed to a settlement offer, whereby Keolis would reinstate plaintiff if plaintiff completed basic return-to-work requirements. *Id.*; (ECF No. 59-5). Plaintiff had to show that he possessed a commercial driver's license and that he had passed a U.S. Department of Transportation physical and drug test. (ECF No. 59-5). Because plaintiff did not even try to complete these requirements, he was not reinstated. (ECF No. 59-2).

  *ii. Procedural history*

On September 25, 2017, plaintiff filed the instant lawsuit.[4] On September 26, 2017, plaintiff filed his first motion for temporary restraining order. (ECF No. 7). The court denied the motion on September 28, 2017. (ECF No. 13).

On September 25, 2017, plaintiff filed a motion to remand. (ECF No. 4). On September 29, 2017, plaintiff filed a motion for preliminary injunction (ECF No. 14). On October 3, 2017, plaintiff filed a second motion for temporary restraining order. (ECF No. 16). On November 2, 2017, the court denied plaintiff's motions. (ECF No. 30).

Plaintiff appealed the denial of these motions to the Ninth Circuit. (ECF No. 36). Plaintiff filed with the Ninth Circuit a "request" for an order enjoining defendants from holding an election that would dissolve the trusteeship pending an appeal. (App. Dkt. # 17). The court denied plaintiff's request to treat the motion on an expedited basis, noting that defendants represented to the court that they had not set a date for an election. (App.

---

[4] Plaintiff's explanation for the delay in filing this lawsuit is that he needed time to obtain adequate legal services to investigate his claims and initiate legal action.

Dkt. #27). The court "instructed [the parties] to inform the court immediately if circumstances change." *Id.*

On February 28, 2018, the Ninth Circuit denied plaintiff's motion "for this court to enjoin appellees from holding an election pending this appeal. . . without prejudice to renewal, if necessary, following presentation to the district court." (App. Dkt #41) (citing Fed. R. App. P. 8(a)). The appeal is currently set to be heard in or around July of 2018. (App. Dkt. #42).

On April 20, 2018, defendants filed a notice with the Ninth Circuit, stating in relevant part: "Defendants inform the Court that ATU has scheduled a new election for officers of ATU Local 1637 to take place on May 30, 2018." (App. Dkt. #44).

**II.     Legal Standard**

"Injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Shelton v. Nat'l Collegiate Athletic Assoc.*, 539 F.2d 1197, 1199 (9th Cir. 1976).

Courts must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20, 129 S.Ct. 365, 374 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element. However, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the [movant] can support issuance of a preliminary injunction, so long as the [movant] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter*, 129 S.Ct. at 392).

The standard for determining whether to grant an injunction pending appeal "is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Ariz. Sec'y of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016).

/ / /

James C. Mahan
U.S. District Judge

- 6 -

### III. Discussion

#### i. *Motion to expedite*

Plaintiff argues that the court should consider the instant motion on an expedited basis because an election that dissolves the trusteeship could moot plaintiff's claims against defendants. (ECF No. 61). The court will grant plaintiff's motion to expedite.

#### ii. *Motion for preliminary injunction*

Plaintiff requests a preliminary injunction that would mandate the ATU to keep the current trusteeship over Local 1637 intact pending the resolution of plaintiff's appeal. (ECF No. 57). Because the court sees no immediate and irreparable harm that will occur on these facts, and the balance of harms and public policy favor denial of the injunction, the court will deny plaintiff's motion.

Here, plaintiff has not demonstrated immediate and irreparable harm that will accrue in the absence of an injunction. Plaintiff argues that a new election would moot plaintiff's ability to seek redress for the unlawful imposition of the trusteeship that is the subject of this action, which constitutes irreparable harm. *Id.* Plaintiff further cites economic losses he has incurred due to his current unemployment. *Id.*

Plaintiff's brief misstates the applicable law regarding mootness of legal challenges to trusteeships. *See* (ECF No. 57). Plaintiff cites *Ross v. Hotel Employees and Restaurant Employees International Union*, 266 F.3d 236, 238 (3d Cir. 2001), for the proposition that dissolution of a trusteeship via election of new officers moots legal challenges to the trusteeship.[5] In *Ross*, the plaintiff brought suit pursuant to Title III of the Labor-Management Reporting and Disclosure Act ("LMRDA"). *Id.* at 240. The district court held that plaintiff's individual request for monetary damages was not properly brought under Title III of the LMRDA, as "Title III was intended to protect local *unions*, not their individual *members*," and plaintiff's "form[s] of requested relief [were] intended to compensate him, not his local." *Id.* at 241 (emphasis in

---

[5] "[A]ppellate courts are unanimous in holding that holding an election, seating new officers and dissolution of the trusteeship renders any legal challenge to the trusteeship under 29 U.S.C. §§ 461 *et seq.* moot." (ECF No. 57 at 2) (citing one appellate case and two district court cases).

original). The district court therefore granted defendants' motion for summary judgment, *id.*, and the Third Circuit affirmed. *Id.* at 257.

In *Ross*, defendants raised the argument at the district court level that the election of new officers mooted plaintiff's claim for equitable relief based on the allegedly unlawful imposition of a trusteeship. *Id.* at 240. However, this argument was raised in defendants' first motion for summary judgment, and was not relied upon by the district court or the appellate court in ruling on defendants' second motion for summary judgment. *See generally Ross*, 266 F.3d 236. If anything, the case stands for the opposite proposition:

> [M]ost significantly for our purposes, the court held that [the plaintiff's] suit [in *Pope v. Office and Professional Employees International Union*, 74 F.3d 1492 (6th Cir 1996),] was not moot merely because the trusteeship had since been terminated. The court reached that result by reading Title I and Title III together and concluding that "[t]he question of the propriety of the trusteeship is not moot because it has direct bearing on whether Pope's Title I rights were violated."

*Id.* at 256 (citing *Pope*, 74 F.3d at 1503).

Caselaw from at least one other circuit also stands for the proposition that a plaintiff's challenges to the propriety of a trusteeship are not mooted by an election that dissolves a trusteeship.[6] *See Atlanta Fed. and City Service Emps. Local Union 554 v. Service Emps. Int'l Union, AFL-CIO*, 441 F.2d 1115, 1116 (5th Cir. 1971) ("[W]e deem the [dissolution of the trusteeship and a new election of officers] insufficient to moot the appeal. . . ."). Plaintiff's

---

[6] To the extent plaintiff attempts to rely on *Wirtz v. Local Unions 410, 410A, 410B,and 410C, Intern. Union of Operating Eng'rs*, 366 F.2d 438 (2d Cir. 1966), his reliance is misplaced. In *Wirtz*, the Secretary of Labor brought suits against locals of the International Union of Operating engineers to set aside 1962 local elections. *Id.* at 440. At the time, "[t]he exclusive remedy which Congress ha[d] created for challenging a union election [was] a suit by the Secretary to declare the election void and direct the conduct of a new election." *Id.* at 442 (internal citation omitted).

> In these two cases, the Secretary has no standing to attack the 1965 elections since no member of Local 30 or Local 410 has filed a valid complaint challenging them. It would serve no practical purpose with respect to these locals to declare their 1962 elections void because the terms of office thereby conferred have expired. And because Title IV does not permit the Secretary to seek either to enjoin future elections, or to declare a given candidacy requirement unlawful absent a valid complaint and an investigation of its application to a specific election, we conclude that we have no power to the decision of the district court, the [sic] that these cases are moot.

*Id.* This case presents significant factual and legal distinctions from *Wirtz*.

James C. Mahan
U.S. District Judge

- 8 -

motion therefore fails to demonstrate to the court that the election of new officers and the dissolution of the trusteeship would moot his claims for relief.

Further, plaintiff's financial argument (that spending his retirement savings and Social Security income constitutes irreparable harm) fails to recognize that readily-ascertainable monetary damages rarely, if ever, constitute irreparable injury. *Rent-A-Center, Inc. v. Canyon Tele. & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . . Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough."). Plaintiff has failed to demonstrate irreparable harm on these facts.

Plaintiff has not shown that the balance of harms favors an injunction. Plaintiff cites to his inability to obtain employment "because he was terminated for embezzlement without due process." (ECF No. 57). As defendants' response notes, plaintiff was terminated from employment because he abandoned his job with Keolis. Plaintiff could have completed return-to-work requirements and be gainfully employed. He chose another path.

On the other end of the scale, the court considers the hardship placed upon defendants if the court were to grant the requested injunction. As defendants note, a trusteeship is meant to facilitate a transition period, and should remain no longer than is necessary to return the union to democratic governance. (ECF No. 59). Requiring defendants to maintain the trusteeship prevents union membership from electing their own governing body. The court finds that the balance of harms does not favor an injunction.

Finally, the public interest counsels against granting injunctive relief in this case. Here, an injunction would prevent the local union from returning to self-governance. Plaintiff does not cite any public interest that would favor court-mandated interference in this case. Plaintiff has not made a strong enough showing in his motion to merit his requested relief. *See Shelton*, 539 F.2d at 1199.

**IV. Conclusion**

Plaintiff has not shown this court that injunctive relief is warranted on these facts.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion for expedited treatment (ECF No. 61) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for a preliminary injunction (ECF No. 57) be, and the same hereby is, DENIED.

DATED THIS 27th day of April, 2018.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE